IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br> MUSTAFA TAYFUR, <br> DEBTOR. <br><br> MUSTAFA TAYFUR, <br><br>     Appellant, <br><br> v. <br><br> SWEPI LP, CENTRAL <br> APPALACHIAN PETROLEUM, <br> and RONDA J. WINNECOUR, <br><br>     Appellees. | Civil Action No. 2:14-413 |

**MEMORANDUM OPINION**

**I.    Introduction**

This case is before the Court on appeal from a final order of the United States Bankruptcy Court for the Western District of Pennsylvania. The question presented is whether the Bankruptcy Court erred in denying the appellant's motion to reject a lease under 11 U.S.C. § 365(d)(2). For the reasons that follow, the decision of the Bankruptcy Court will be affirmed.

**II.    Background**

Mustafa Tayfur ("Tayfur") owns roughly 107 acres of real property in Worth Township, which is located in Butler County, Pennsylvania. ECF No. 1-3 at 2. On December 28, 2005, Tayfur executed a lease agreement permitting Central Appalachian Petroleum to extract oil and gas lying beneath the property's surface. ECF No. 1-15 at 6. Although the agreement was signed by Tayfur at the time of its execution, it was never signed by a representative of Central Appalachian Petroleum. ECF No. 1-3 at 2. At a minimum, the agreement was to remain in force

1

for a "primary term" of ten years. ECF No. 1-15 at 6. Tayfur was to be paid $3.00 per year for each acre, totaling an annual payment of $321.00. ECF No. 1-3 at 2. The terms of the agreement provided that the lease could be extended by either the continuation of the prescribed payments or the conduction of operations designed to extract oil or gas from the property.[1] ECF No. 1-15 at 6. Payments due under the lease agreement commenced in a timely manner. ECF No. 1-3 at 2. Central Appalachian Petroleum assigned the lease to East Resources, Inc. ("East Resources"), on July 14, 2006. ECF No. 1-25 at ¶ 3. SWEPI LP ("SWEPI") is East Resources' successor-by-merger. *Id.* at ¶ 4. During the relevant period of time, Tayfur received proper payments from SWEPI and its predecessors. *Id.* at ¶ 5. He cashed every check that was sent to him pursuant to the terms of the lease agreement. *Id.* at ¶ 6. No exploratory operations have commenced under the lease. *Id.* at ¶ 8.

On November 14, 2011, Tayfur filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code [11 U.S.C. § 1301 *et seq.*]. ECF No. 1-3 at 2. In a plan dated November 22, 2011, Tayfur expressed an intention to provide the necessary funding through oil and gas payments totaling approximately $120,000.00. *Id.* He indicated that the payments would most likely commence in June 2012. *Id.* The United States Bankruptcy Court for the Western District of Pennsylvania confirmed the plan on an interim basis. *Id.* at 3. Tayfur filed an amended plan on July 30, 2012. *Id.* He advised that a decline in gas prices had delayed the anticipated drilling on the property, and that payments were expected to begin during the summer of 2013. *Id.* An interim order confirming the modified plan was entered on September 20, 2012. *Id.*

---

[1] The language of the agreement permitting the extension under the specified conditions constitutes an enforceable "habendum clause" under Pennsylvania law. *Hite v. Falcon Partners*, 13 A.3d 942, 946 (Pa.Super.Ct. 2011).

2

Thomas E. McMaster ("McMaster"), an agent for Bounty Minerals, apparently contacted Tayfur during the early part of 2013 to discuss a potential purchase of the right to extract oil and gas from the property. ECF No. 1-29 at 15-16. In a letter to Tayfur dated February 17, 2013, McMaster stated that he had prepared a proposed offer for the purchase of the property's "mineral rights." ECF No. 1-15 at 5. On February 20, 2013, Tayfur filed a motion to reject the "unexpired lease" pursuant to 11 U.S.C. § 365(d)(2). ECF No. 1-3 at 3. In support of his motion, Tayfur asserted that he "wishe[d] to reject the lease based upon a tentative offer for a substantial amount of money related to [his] subsurface rights." ECF No. 1-5 at ¶ 6.

SWEPI filed an objection on March 21, 2013, contending that Tayfur's motion should be denied because he had "provide[d] no evidence of the alleged new lease or its purported benefit to the estate." ECF No. 1-7 at ¶ 3. Attempting to provide an additional ground for the denial of Tayfur's motion, SWEPI argued that 11 U.S.C. § 365(h)(1)(A)(ii) would allow it to remain in possession of the property even if Tayfur were permitted to reject the existing lease. *Id.* at ¶¶ 4-13. SWEPI maintained that it would "exercise its right of continued possession," and that Tayfur "w[ould] be unable to lease the premises to another party." *Id.* at ¶ 13.

Harry Klodowski ("Klodowski") is a Pennsylvania attorney whose practice focuses on environmental and mineral rights law. ECF No. 1-12 at ¶ 3. He has negotiated gas leases with SWEPI and its agents. *Id.* at ¶ 7. In an affidavit signed on March 26, 2013, Klodowski declared that the payment terms of Tayfur's 2005 lease agreement were "significantly below" the "current market value." *Id.* at ¶ 10.

An evidentiary hearing was held before the Bankruptcy Court on October 22, 2013. ECF No. 1-29 at 1. Tayfur testified that three different companies had expressed an interest in buying or leasing the "gas and mineral rights" to his property. *Id.* at 15. He identified McMaster as one

3

of the individuals who had spoken with him about the matter. *Id.* at 15-16. When questioned about the negotiations, Tayfur acknowledged that he had not received any formal offers from potential lessees. *Id.* at 16. He explained that he had stopped negotiating with McMaster before receiving such an offer. *Id.* at 19. Klodowski testified that the estate would benefit from the proposed rejection of the 2005 lease. *Id.* at 25-26. Although Tayfur's property was surrounded by areas controlled by SWEPI, Klodowski asserted that leases were "like playing cards" that were "routinely traded between companies." *Id.* at 26. He denied that potential lessees would avoid the property simply because it was surrounded by property leased to SWEPI. *Id.* Klodowski maintained that another company "would be happy" to purchase property desired by SWEPI in order to facilitate a subsequent transfer of property surrounding the area owned by Tayfur. *Id.*

Lester Hebert ("Hebert"), a land representative employed by SWEPI, testified that it was more economical for oil and gas companies to drill "lateral" wells rather than "vertical" wells. ECF No. 1-29 at 61. He stated that Tayfur's 107-acre parcel of land was not large enough to facilitate the creation of a large well. *Id.* at 56. Hebert insisted that land swaps of the kind described by Klodowski did not happen very often. *Id.* at 56-57. He expressed doubt that SWEPI would be willing to deal with a company with which it did not have a preexisting business relationship. *Id.* at 57. Hebert further testified that the parcel's close proximity to Moraine State Park would make lateral drilling even more difficult, since state parks typically had "a lot of surface requirements." *Id.* at 61. He responded in the negative when asked whether companies were regularly drilling vertical wells in western Pennsylvania. *Id.* at 76.

In a memorandum opinion and order dated February 26, 2014, the Bankruptcy Court denied Tayfur's motion to reject the lease. *Tayfur v. SWEPI LP*, 505 B.R. 673 (Bankr.W.D.Pa.

4

2014). On March 8, 2014, Tayfur appealed the Bankruptcy Court's decision to this Court pursuant to 28 U.S.C. § 158(a). ECF No. 1. The matter has been fully briefed and is now ripe for disposition.

### III. Jurisdiction and Standard of Review

Federal district courts exercise appellate jurisdiction over final judgments, orders and decrees entered by bankruptcy courts. 28 U.S.C. § 158(a)(1). Federal Rule of Bankruptcy Procedure 8013 provides that a reviewing court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. "[A] bankruptcy court's legal determinations are reviewed *de novo*, its factual findings for clear error and its exercise of discretion for abuse." *Official Committee of Unsecured Creditors of J. Allen Steel Co. v. Nucor-Yamato Steel Co.*, 336 B.R. 226, 229 (W.D.Pa. 2005). "Mixed questions of fact and law must be broken down and reviewed under the applicable standard." *Titus v. Shearer*, 498 B.R. 508, 514 (W.D.Pa. 2013).

### IV. Discussion

Tayfur seeks to reject the 2005 lease pursuant to 11 U.S.C. § 365(d)(2), which provides that "the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan." The "leases of real property" subject to assumption or rejection under that statutory provision "include any rental agreement to use real property." 11 U.S.C. § 365(m). Although previous plans proposed by Tayfur had been confirmed on an interim basis, no final confirmation order had been entered at the time of his motion. *Tayfur*, 505 B.R. at 677. The assumption or rejection of an "executory contract or unexpired lease" is subject to judicial approval. 11 U.S.C. § 365(a). "The standard applied to determine whether the rejection of an executory contract or unexpired

5

lease should be authorized in the 'business judgment' standard." *In re: Philadelphia Newspapers, LLC*, 424 B.R. 178, 182 (Bankr.E.D.Pa. 2010). That standard can be satisfied by a showing that the proposed rejection would benefit the estate. *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989).

### A. The Landlord and Tenant Act

The legal relationships between landlords and tenants in Pennsylvania are governed by the Landlord and Tenant Act of 1951 [68 PA. STAT. § 250.101 *et seq.*]. Under the Landlord and Tenant Act, real property "may be leased for a term of not more than three years" by means of an "oral or written contract or agreement." 68 PA. STAT. § 250.201. Leases spanning longer periods of time are governed by 68 PA. STAT. § 250.202, which provides:

> Real property, including any personal property thereon, may be leased for a term of more than three years by a landlord to a tenant or by their respective agents lawfully authorized in writing. Any such lease must be in writing and signed by the parties making or creating the same, otherwise it shall have the force and effect of a lease at will only and shall not be given any greater force or effect either in law or equity, notwithstanding any consideration therefor, unless the tenancy has continued for more than one year and the landlord and tenant have recognized its rightful existence by claiming and admitting liability for the rent, in which case the tenancy shall become one from year to year.

68 PA. STAT. § 250.202. A separate provision of the Landlord and Tenant Act permits a landlord to terminate an indeterminate lease lasting for more than one year by requiring the tenant to leave the relevant parcel of property within thirty days of his or her receipt of notice that the landlord intends to reoccupy the premises. 68 PA. STAT. § 250.501(b).

Although the 2005 lease at issue in this case was to remain in effect for a minimum of ten years, nobody signed it on behalf of Central Appalachian Petroleum. ECF No. 1-15 at 6-7. Only Tayfur signed the written agreement. *Id.* at 7. In support of his motion to reject the lease, Tayfur argued that the agreement had created a "lease at will" within the meaning of § 250.202, and that

6

he was not required to adhere to its terms for the duration of the ten-year period. *Tayfur*, 505 B.R. at 677. Rejecting that argument, the Bankruptcy Court concluded that the Landlord and Tenant Act did not apply to oil and gas leases. *Id.* at 677-678, 684.

"The traditional oil and gas 'lease' is far from the simplest of property concepts." *Brown v. Haight*, 255 A.2d 508, 510 (Pa. 1969). Under Pennsylvania law, "the title conveyed in an oil and gas lease is inchoate, and is initially for the purpose of exploration and development." *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). "If development during the agreed upon term is unsuccessful, no estate vests in the lessee. If, however, oil or gas is produced, a fee simple determinable is created in the lessee, and the lessee's right to extract the oil or gas becomes vested." *Id.* A "lease of minerals in the ground" constitutes a sale of an estate in fee simple until "the available minerals are removed," "leav[ing] the lessor with only an interest in the royalties to be paid under the lease, which are personal property." *Snyder Brothers, Inc. v. Peoples Natural Gas Co.*, 676 A.2d 1226, 1230 (Pa.Super.Ct. 1996). Because "the execution of an oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry," the resolution of a case involving the implementation of such a lease may require the application of "certain aspects of property law as refined by and utilized within the industry." *Jacobs v. CNG Transmission Corp.*, 332 F.Supp.2d 759, 772 (W.D.Pa. 2004). Acknowledging this principle, the Pennsylvania Superior Court has explained that "oil and gas leases are not controlled by normal landlord and tenant law." *Derrickheim v. Brown*, 451 A.2d 477, 479 (Pa.Super.Ct. 1982).

Under Pennsylvania law, "the surface estate, the mineral estate, and the right to surface support" constitute "discrete estates in land." *In re: Powell*, 482 B.R. 873, 876 (Bankr.M.D.Pa. 2012). "Because these estates are severable, different owners may hold title to separate and

7

distinct estates in the same land." *Hetrick v. Apollo Gas Co.*, 608 A.2d 1074, 1077 (Pa.Super.Ct. 1992). "A mineral lessee is unquestionably more in the position of a purchaser than in that of a mere occupant of the land." *Arkansas Louisiana Gas Co. v. Evans*, 338 S.W.2d 666, 669 (Ark. 1960). For this reason, statutory provisions defining the respective possessory rights of landlords and tenants do not control the application and construction of oil and gas leases. *Cross v. Lowery*, 404 So.2d 645, 646-648 (Ala. 1981). Since SWEPI was a purchaser of mineral rights rather than merely an occupant of Tayfur's property, the provisions of the Landlord and Tenant Act defining the obligations of landlords and tenants are inapplicable to the 2005 lease agreement.[2] *Kepple v. Fairman Drilling Co.*, 551 A.2d 226, 230-231 (Pa.Super.Ct. 1988). The Bankruptcy Court correctly concluded that § 250.202 did not give that agreement "the force and effect of a lease at will only." *Tayfur*, 505 B.R. at 677-678, 684.

### B. The Statute of Frauds

Pennsylvania's Statute of Frauds, which is codified at 33 PA. STAT. § 1, provides that "all leases, estates, [and] interests . . . not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force or effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding." This provision is inapplicable to "all leases not exceeding the term of three years from the making therof." 33 PA. STAT. § 1. In *Ferri v. Liberatoscioli*, 13 A.2d 45 (Pa. 1940), the Pennsylvania Supreme Court held that the Statute of Frauds "does not void or invalidate the leases to which it applies, but merely shortens their [duration]."

---

[2] Because the Act does not govern the terms and conditions of the lease in question, Tayfur's reliance on *Burg v. Betty Gay of Washington, Inc.*, 225 A.2d 85 (Pa. 1966), *Flomar Corp. v. Logue*, 210 A.2d 254 (Pa. 1965), and *Brady Land Co. v. Bell Telephone Co.*, 190 A.2d 568 (Pa. 1962), is unavailing. ECF No. 4 at 17-18.

8

Tayfur contends that the failure of Central Appalachian Petroleum to sign the 2005 lease caused it to expire in December 2008, and to become an "at will" lease during the course of each subsequent year. ECF No. 4 at 16; ECF No. 9 at 4-8. He correctly conveys the conclusion that would be forthcoming if the Statute of Frauds were to render the durational terms of the lease agreement unenforceable. *Blumer v. Dorfman*, 289 A.2d 463, 468-469 (Pa. 1972). Under the present circumstances, however, the Statute of Frauds does not preclude the agreement from being enforced according to its express terms.

It is undisputed that Tayfur signed the lease and executed the agreement with Central Appalachian Petroleum. ECF No. 1-15 at 7. During the evidentiary hearing conducted before the Bankruptcy Court, Tayfur testified that he had "signed the form." ECF No. 1-29 at 11. He acknowledged that he had received and cashed checks in accordance with the agreement. *Id.* at 20-22. His receipt of checks did not alone estop him from raising the Statute of Frauds as a basis for challenging the agreement's terms. *Del Borrello v. Lauletta*, 317 A.2d 254, 255 (Pa. 1974). In light of Tayfur's *testimony*, however, the terms of the lease agreement can be enforced as written. *Zlotziver v. Zlotziver*, 49 A.2d 779, 781 (Pa. 1946)(explaining that "if the title-holder admits, either in his pleadings or his testimony, that he did in fact enter into the contract, the purpose of the statute of frauds is served and *the oral agreement* will be enforced by the court")(emphasis added). An oral agreement falling within the purview of the Statute of Frauds is generally accorded *full legal effect* when the parties thereto affirm the existence of its terms. *Schuster v. Pennsylvania Turnpike Commission*, 149 A.2d 447, 452 (Pa. 1959). Tayfur did not testify that he had been left in the dark about the terms of the agreement. Instead, he merely expressed a desire to "get rid of the contract and get a better one." ECF No. 1-29 at 14. "The purpose of the Statute of Frauds is to avoid the opportunity for fraud and perjury likely to arise

9

from oral conveyances of estates in land." *Birdsboro Municipal Authority v. Reading Co.*, 758 A.2d 222, 226 (Pa.Super.Ct. 2000). Because the Statute of Frauds was "designed to guard against fraud and perjury," it has no application when the existence of a contract is admitted. *Sferra v. Urling*, 195 A. 422, 425 (Pa. 1937). Instead, it merely acts as a safeguard against fraudulent conduct "by forbidding the assertion of a right or interest in real estate by one who can show no written basis for the claim." *Gerlock v. Gabel*, 112 A.2d 78, 81 (Pa. 1955).

Tayfur relies on *Ferri* and *Flight Systems, Inc. v. Electronic Data Systems Corp.*, 112 F.3d 124 (3d Cir. 1997), for the proposition that the Statute of Frauds effectively shortened the duration of the 2005 lease at issue in this case. ECF No. 9 at 6-7. In *Flight Systems*, however, the United States Court of Appeals for the Third Circuit explicitly recognized that the Statute of Frauds could be satisfied by an *admission* that a longer lease had been executed. *Flight Systems*, 112 F.3d at 129 ("If Flight Systems satisfies the statute of frauds, either by producing signed writings *or by obtaining an admission from EDS that a five-year lease was formed*, specific performance may be awarded.")(emphasis added). The Court of Appeals interpreted *Ferri* to mean that, in the absence of a signed writing *or an admission*, the Statute of Frauds would render the durational term of a contract unenforceable. *Id.* Unless the rule articulated in *Flight Systems* has been rejected or undermined by a subsequent decision of the Pennsylvania Supreme Court, this Court is bound by the Court of Appeals' reading of *Ferri*. *Covell v. Bell Sports, Inc.*, 651 F.3d 357, 360-364 (3d Cir. 2011). Tayfur does not rely on such an intervening decision. ECF No. 9 at 6-7. Since Tayfur acknowledged the existence of the relevant lease terms while testifying under oath, he cannot invoke the Statute of Frauds to escape the application of terms

10

that he now considers to be undesirable.³ *Flight Sytems*, 112 F.3d at 127-128. The Bankruptcy Court did not err in determining that the terms of the lease could be enforced as written even though nobody had signed the agreement on Central Appalachian Petroleum's behalf. *Tayfur*, 505 B.R. at 678-679.

In an attempt to circumvent the import of the lease agreement in relation to SWEPI, Tayfur points out that he never signed a document accepting the lease's assignment to East Resources. ECF No. 4 at 21. He goes on to assert that the Statute of Frauds precludes the enforcement of an unwritten, unsigned agreement to assign an oil and gas lease. *Id.* To support his position, Tayfur relies on the Superior Court's decisions in *Stockdale v. Sellers*, 157 A. 30 (Pa.Super.Ct. 1931), and *Szymanowski v. Brace*, 987 A.2d 717 (Pa.Super.Ct. 2009). In *Stockdale*, the Superior Court observed that, under the Statute of Frauds, "[a]n agreement to assign an interest in a lease or leasehold for oil and gas must be in writing." *Stockdale*, 157 A. at 31. Nonetheless, the Superior Court explained in *Syzmanowski* that *Stockdale* precludes the enforcement of an unwritten, unsigned assignment agreement when "the issue is whether the parties ever agreed at all to an assignment." *Szymanowski*, 987 A.2d at 726. In *Szymanowski*, the record did not contain sufficient evidence to establish that an assignment had been effectuated. *Id.* at 725. The instant case is clearly distinguishable because Tayfur and SWEPI *stipulated* that the lease had been assigned to East Resources, and that SWEPI was East Resources' successor-by-merger.⁴ ECF No. 1-25 at ¶¶ 3-4. Tayfur also stipulated and testified

---

³ In light of this determination, the Court need not consider the Bankruptcy Court's alternative conclusion that certain written instruments contained in the record would have been sufficient to satisfy the Statute of Frauds in any event. *Tayfur v. SWEPI LP*, 505 B.R. 673, 679-680 (Bankr.W.D.Pa. 2014).

⁴ The Court's review in this case is limited to the issues raised before the Bankruptcy Court. *International Finance Corp. v. Kaiser Group International, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). SWEPI contends that Tayfur waived his challenge to the validity of the assignment by belatedly articulating his argument in a reply brief filed after the evidentiary hearing. ECF No. 7 at 17-18. Although the Bankruptcy Court noted that Tayfur had not questioned the enforceability of the assignment before or during the evidentiary hearing, it nevertheless addressed the merits of his argument and rejected it on substantive grounds. *Tayfur v. SWEPI LP*, 505 B.R. 673, 680 (Bankr.W.D.Pa. 2014).

11

that he had continued to receive payments from East Resources and SWEPI in the aftermath of the assignment. *Id.* at ¶ 5; ECF No. 1-29 at 21. Given that the existence of the assignment is *undisputed* in this case, there is no role for the Statute of Frauds and *Stockdale* to play. *Deutsche Bank National Trust Co. v. Evans*, 421 B.R. 193, 199 (W.D.Pa. 2009); *Szymanowski*, 987 A.2d at 725-726.

### C. SWEPI's Possessory Rights

In determining that Tayfur's proposed rejection of the 2005 lease was not in the best interest of the estate, the Bankruptcy Court concluded that an order granting his motion would not have extinguished SWEPI's possessory rights over the property. *Tayfur*, 505 B.R. at 683-684. That conclusion was grounded on 11 U.S.C. § 365(h)(1)(A)(ii), which provides that "if the term of [a rejected] lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law." Relying on that statutory provision, the Bankruptcy Court observed that SWEPI's possessory rights over the property would continue at least through December 28, 2015, even if Tayfur were permitted to reject the lease. *Id.* at 684.

Tayfur contends that the Bankruptcy Court's assumption about the impact of § 365(h)(1)(A)(ii) was contrary to Pennsylvania law. ECF No. 4 at 24-25. His argument is based

---

The Bankruptcy Court concluded that *Midland Gas Co. v. Jefferson County Gas Co.*, 85 A. 853 (Pa. 1912), did not impugn the validity of the assignment. *Id.* Since the Bankruptcy Court addressed the merits of Tayfur's argument, this Court does not view the issue as having been waived because of his failure to raise it at an earlier time. Nevertheless, the stipulation conclusively established that the assignment had been effectuated. ECF No. 1-25 at ¶ 3. Therefore, there is no dispute as to "whether the parties ever agreed at all to an assignment." *Szymanowski v. Brace*, 987 A.2d 717, 726 (Pa.Super.Ct. 2009).

on the Landlord and Tenant Act, which permits "[a] landlord desirous of repossessing real property" to serve a tenant with a notice to quit under certain circumstances. 68 PA. STAT. § 250.501(a). As discussed earlier, the Landlord and Tenant Act does not govern the parties' respective rights and obligations under the 2005 lease agreement. *Derrickheim*, 451 A.2d at 479. Even if that statute did apply, Tayfur could not have commenced proceedings to recover possession of the leased property before the termination of the ten-year term specified in the agreement. *Peitzman v. Seidman*, 427 A.2d 196, 199, n. 3 (Pa.Super.Ct. 1981). Tayfur's argument is premised on a belief that § 250.202 and the Statute of Frauds shortened the term of the lease because the agreement was never signed on behalf of Central Appalachian Petroleum. ECF No. 4 at 24-25. Since that premise has already been rejected, there is no statutory foundation upon which a notice to quit could rest. The Court has no reason to disturb the Bankruptcy Court's determination that, under § 365(h)(1)(A)(ii), SWEPI would have been entitled to exercise its possessory rights over the property through December 28, 2015, even if Tayfur had been permitted to reject the lease pursuant to § 365(d)(2). *Tayfur*, 505 B.R. at 683-684.

### D. The Bankruptcy Court's Weighing of the Evidence

Klodowski testified that potential lessees of the property in question would not avoid the area simply because the surrounding parcels were controlled by SWEPI. ECF No. 1-29 at 26. He analogized oil and gas leases to "playing cards" that were frequently "traded between companies." *Id.* Klodowski further asserted that, if the 2005 lease were to be rejected, another company could purchase another piece of property sought by SWEPI in order to trade it for the area adjacent to Tayfur's property. *Id.*

13

Hebert testified that it was more profitable for oil and gas companies to drill "lateral" wells rather than "vertical" wells. ECF No. 1-29 at 61. He stated that Tayfur's parcel of property was too small to facilitate the "lateral" drilling of a large well. *Id.* at 56. Because the property was located near Moraine State Park, Hebert expressed the view that a prospective lessee would have difficulty utilizing it in an economical manner without intruding on surrounding areas under SWEPI's control. *Id.* at 61. He further opined that SWEPI would be disinclined to deal with a lessee with which it did not have an existing business relationship. *Id.* at 57.

Although Tayfur expressed confidence that he could find a new lessee if permitted to reject the 2005 lease, he acknowledged that he had not received any formal offers. ECF No. 1-29 at 15-16. Based on the testimonial evidence presented at the evidentiary hearing, the Bankruptcy Court concluded that Tayfur had "show[n] little likelihood that another production company would lease the property" if a rejection of the existing lease were to be permitted under § 365(d)(2). *Tayfur*, 505 B.R. at 683. Consequently, it was determined that Tayfur had failed to "meet his burden of showing that the [proposed] rejection of the lease would be in the best interest of the estate." *Id.* Tayfur essentially invites the Court to re-weigh the conflicting testimonial evidence and reject the Bankruptcy Court's factual findings. ECF No. 4 at 25-27.

"Core proceedings" under the Bankruptcy Code include "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). Proceedings seeking the rejection of a lease pursuant to § 365(d)(2) fall within that category. *In re: Windmill Farms Management Co.*, 116 B.R. 755, 761 (S.D.Cal. 1990); *In re: Texaco, Inc.*, 77 B.R. 433, 437 (Bankr.S.D.N.Y. 1987); *In re: New York Deli, Ltd.*, 75 B.R. 797, 801 (Bankr.D.Haw. 1987). Under the present circumstances, the Bankruptcy Court's findings of fact can be set aside only if they are "clearly

14

erroneous." FED. R. BANKR. P. 8013. The proper application of this standard requires that "marked deference" be given to those findings. *Stern v. Marshall*, 564 U.S. ___, ___, 131 S.Ct. 2594, 2611, 180 L.Ed.2d 475 (2011). A factual finding can be rejected in this context only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Schlumberger Resource Management Services, Inc. v. CellNet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003), quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Because the factual findings made in this case are grounded in substantial evidentiary support, the arguments advanced by Tayfur provide no basis for reversing or modifying the Bankruptcy Court's decision.

**V.     Conclusion**

Tayfur has identified no error of law or groundless factual finding justifying a reversal or modification of the decision under review. Accordingly, the Bankruptcy Court's decision of February 26, 2014, will be affirmed. An appropriate order will follow.

*[signature]*
Arthur J. Schwab
United States District Judge
7-7-14